NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL AND
MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL HISHAM SAYEGH, *Appellant.*

No. 1 CA-CR 14-0430
FILED 1-13-2015

---

Appeal from the Superior Court in Maricopa County
No. CR2013-000543-001
The Honorable Margaret R. Mahoney, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Spencer D. Heffel
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which
Presiding Judge Patricia A. Orozco and Judge Maurice Portley joined.

_____

H O W E, Judge:

¶1   This appeal is filed in accordance with *Anders v. California*, 386
U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Counsel
for Michael Sayegh asks this Court to search the record for fundamental
error. Sayegh was given an opportunity to file a supplemental brief in
propria persona. He has not done so. After reviewing the record, we affirm
Sayegh's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2   We view the facts in the light most favorable to sustaining the
trial court's judgment and resolve all reasonable inferences against Sayegh.
*State v. Fontes*, 195 Ariz. 229, 230 ¶ 2, 986 P.2d 897, 898 (App. 1998).

¶3   At noon on December 28, Detective Galen Davis was sitting
in an unmarked patrol car in a parking lot. He saw Sayegh also sitting in a
car in the lot. Another car pulled up and parked next to Sayegh's car.
Sayegh got into the front passenger seat of the second car. A "very short"
time later, Sayegh returned to his car, and the other car sped away. Based
on his training and experience, Detective Davis decided to talk to Sayegh.

¶4   When Detective Davis approached Sayegh's car, he smelled
marijuana coming from inside the car. He saw Sayegh "putting a quantity
of marijuana into the bowl of the pipe that was in his lap." He told Sayegh
to give him the pipe. Sayegh gave him the pipe and marijuana. Sayegh
explained that he bought the marijuana for $20, and he needed to smoke
marijuana because he had an eating disorder.

¶5   When asked for identification, Sayegh provided a California
driver's license. The detective checked the driver's license's photo, and it
matched the person he was talking to. Because of the California license,
Detective Davis asked Sayegh for a local address for submitting the charges,
and Sayegh provided a Phoenix address. Their interaction lasted for 15
minutes. Later, the detective checked the car's registration, and it was
registered to the same person listed on the driver's license—"Michael

Sayegh." When Detective Davis later processed Sayegh's full name, date of birth, and gender in the police's PACE system, the system retrieved Sayegh's information as provided on his driver's license.

¶6        Sayegh was charged with one count of possession of marijuana and one count of possession of drug paraphernalia, both class six felonies. The State later moved to designate both offenses as misdemeanors, and the court granted its motion. At trial, the parties stipulated that the substance involved was 3.5 grams of marijuana, and thus, the only contested issue was whether Sayegh was the individual Detective Davis encountered that day.

¶7        Detective Davis made an in-court identification of Sayegh. He testified that the circumstances that day, including "[s]omeone parked in a vehicle, waiting, another car arrives," and getting into the second car, was suspicious. He emphasized the suspicious nature of Sayegh "actually open[ing] the door and [getting] into the car and [sitting] in the front passenger seat, and then [he was] only there for a few moments and [then he got] back out of the car."

¶8        Although nearly three years had passed since Detective Davis saw Sayegh, he testified that he distinctly remembered the encounter with Sayegh for three reasons: because the detective was frustrated that he could not get a backup unit to assist him; because he did not immediately arrest Sayegh, and he does not normally give drug users a "break"; and because Sayegh looked "foreign" to him. When asked why he did not arrest Sayegh, nonetheless, the detective responded that it was a "simple possession charge" and he was "satisfied with who [Sayegh] was and his document." When asked whether he had any doubt that the person in the courtroom was the person he spoke with that day, he responded in the negative.

¶9        After Detective Davis testified, the State rested its case-in-chief. Defense counsel moved for judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20, arguing that the State had not met its burden of proving that the individual the detective encountered was Sayegh. The court denied the motion and ruled that the State had presented substantial evidence to warrant a conviction.

¶10        Sayegh was the sole defense witness. He testified that he had an Arizona driver's license and never had a California driver's license, even though he worked and lived in California with his uncle. He conceded that the car Detective Davis saw that day was registered to him, but it was leased for his uncle's company. The leasing documents were in the glove

compartment with his name, address, and social security number. Nine other people used that car. Of the seven employees that Sayegh could list at trial, four were his first cousins.

¶11       Sayegh testified that on December 28, he was cleaning carpets in apartment units in northern California. He worked either a nine or ten-hour day. He had never seen Detective Davis in his life. Sayegh also testified that he found out about the charges when his mother told him that the police was looking for him. When asked why he did not contact the police to file a fraud claim, he responded that he did not know that he could file such a claim or that he could even report a crime to the police. The trial court found Sayegh guilty of both counts as charged.

¶12       The trial court conducted the sentencing hearing in compliance with Sayegh's constitutional rights and Arizona Rule of Criminal Procedure 26. The court found that both counts were Proposition 200[1] first strike eligible because they were committed on the same day. For both counts, the court sentenced him to concurrent terms of unsupervised probation for one year, with a condition that he complete 24 hours of community service. The court also imposed a fine and administrative fees.

## DISCUSSION

¶13       We review Sayegh's convictions and sentences for fundamental error. *See State v. Gendron*, 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991).

¶14       Counsel for Sayegh has advised this Court that after a diligent search of the entire record, he has found no arguable question of law. We have read and considered counsel's brief and fully reviewed the record for reversible error. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. We find none. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, Sayegh was represented

---

[1] Section 13–901.01, more commonly referred to as "Proposition 200," provides that an individual convicted of a drug offense involving the possession or use of a controlled substance or drug paraphernalia is eligible for probation. A.R.S. § 13–901.01. Proposition 200 first strike provides that if a person is convicted of his or her first drug offense, then that person will be placed on probation, and it does not require that the person be sentenced to incarceration. *See generally id.* Additionally, the individual is required to pay a fee and participate in drug counseling and/or education as conditions of probation. *See id.* § 13–901.01(D).

by counsel at all stages of the proceedings, and the sentences imposed was within the statutory limits. We decline to order briefing, and we affirm Sayegh's convictions and sentences.

¶15     Upon the filing of this decision, defense counsel shall inform Sayegh of the status of his appeal and of his future options. Defense counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). Sayegh shall have 30 days from the date of this decision to proceed, if he desires, with a pro per motion for reconsideration or petition for review.

**CONCLUSION**

¶16     We affirm Sayegh's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama